IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELLONY LEE NEWCOMER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 14-161J |

AMBROSE, Senior District Judge

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 9 and 11). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 10 and 12). Plaintiff also filed a Reply Brief. (Docket No. 15). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 11) and denying Plaintiff's Motion for Summary Judgment (Docket No. 9).

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about August 9, 2011, Plaintiff applied for DIB, and, on or about August 16, 2011, she applied for SSI. (R. 106-116, 225-237). In both applications, she alleged

1

that since February 28, 2011, she had been disabled due to bipolar disorder, ADHD, depression, hemiplegic migraines, and anxiety. (R. 124, 138, 321-322). Her last date insured is December 31, 2016. (R. 14). The state agency denied her claims initially, and she requested an administrative hearing. (R. 156-166). Administrative Law Judge ("ALJ") Marty Pillion held a hearing on January 15, 2013, at which Plaintiff was represented by counsel. (R. 48-85). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 75-83). In a decision dated April 9, 2013, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 14-41). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on December 31, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-5). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 9 and 11). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of

fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision

with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ ERRED BY FAILING TO EVALUATE THE EFFECTS OF PLAINTIFF'S MIGRAINE HEADACHES ON HER ABILITY TO WORK ON A REGULAR AND CONTINUING BASIS AND/OR ERRED IN HIS CREDIBILITY ANALYSIS**

The ALJ found that Plaintiff had severe impairments, including cervicalgia, myofascial pain syndrome, migraines, spasm of the muscle, insomnia, anxiety disorder, depression, asthma, occipital neuralgia, bilateral hip pain, chronic sinusitis, neck strain, and left shoulder pain. (R. 17). He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could occasionally balance, stoop, kneel, crawl and climb ramps and stairs but no climbing of ropes, ladders, or scaffolds, and no crouching. In addition, Plaintiff could occasionally reach overhead and frequently reach in other directions; and could frequently handle, finger, and feel. There should be no exposure to hazards such as heights or moving machinery. Plaintiff should have no exposure to flashing lights or lights brighter than that typically found in an indoor work environment such as an office setting or department store and no exposure to more than quiet noise intensity level as that noise intensity level is defined in the DOT. There should be no exposure to weather, extreme heat or cold, wetness, vibrations, or humidity; and no exposure to atmospheric conditions such as smoke, fumes, odors, dusts, gases, or poor ventilation in excess of that typically found in an indoor work environment such as an office setting or department store. She was limited to simple, routine repetitive tasks and to making simple work related decisions. She could not tolerate fast-paced production requirements as seen in assembly line type work. She could tolerate infrequent changes in work setting defined as no more than two changes per day. She would need to change positions during the work day, but this could be accommodated by the normal morning, lunch, and afternoon breaks. Id. at 21.

Plaintiff argues that this RFC finding is not supported by substantial evidence because, despite finding her headaches to be a severe impairment, the ALJ failed to address the frequency, unpredictability, and intensity of the headaches, including the resultant effect on her ability to work on a regular and continuing basis, *i.e.*, that she would be off-task or absent from work in excess of what would be tolerated in competitive employment. See Pl.'s Br. [ECF No. 10] at 5-9. After careful review of the record, including the documentary evidence, the ALJ's opinion, and the hearing testimony, I disagree.

An ALJ must base his RFC assessment on all of the relevant evidence of record. 20 C.F.R. §§ 404.1545(a), 416.945(a). In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). That is, the ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

Here, the ALJ found Plaintiff's headaches to be a severe impairment, and spent over twenty pages of his twenty-eight page Opinion discussing Plaintiff's headache-related complaints and associated record evidence. (R. 16-41). Contrary to Plaintiff's argument, the ALJ's thorough discussion plainly recognized the episodic nature of her headaches, including their alleged frequency, unpredictability, and intensity. For example, in his Step 3 analysis, in accordance with applicable guidance, the ALJ recognized Plaintiff's migraines as an "episodic disorder" analogous to nonconvulsive epilepsy for purposes of determining whether the

5

headaches result in "significant interference with activity during the day." Id. at 18.[1] In so doing, the ALJ represented that he had "carefully evaluated the documentary evidence for a detailed description of the typical headache event pattern, including the premonitory symptoms, aura, duration, intensity, accompanying symptoms, treatment, occurrence, and the effects on daily activities." Id. Citing record evidence, the ALJ concluded that Plaintiff "does experience cervicalgia, myofascial pain syndrome, occipital neuralgia, and common migraine with intractable features," and that the record documented "her reports of hemiplegic symptoms." Id. He found, however, that "for reasons explained [elsewhere in his opinion]," the evidence did "not demonstrate [that] the *intensity, frequency, and severity* of the migraines significantly interferes with her activities of daily living." Id. (citing Exs. 4E, 6E, 7E, 1F, 8F) (emphasis added).

The ALJ further noted Plaintiff's testimony and documentation that she is largely independent in activities of daily living if she is *not* suffering from a headache. Id. at 19, 22. He also recounted her testimony regarding the alleged frequency and duration of her headaches and her alleged limitations while suffering one. Id. at 19-20, 22-25 (noting, inter alia, Plaintiff's testimony that she has headaches up to twice a week; that each headache can last for days to weeks; and that she misses about 5 days of work per month). The ALJ additionally recounted in detail the medical evidence of record, including the statements Plaintiff made therein to various medical providers regarding her headache symptoms. See id. at 25-39 (citing, inter alia, Exs. 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 10F). The ALJ likewise did not ignore the vocational expert's testimony that absences of one day a week, four times a month, would exceed an employer's tolerance for absences of one day a month, and that an individual who would be off task for 20%

---

[1] As support for this comparison, the ALJ cited National Question and Answer, Tracking No. 09-036, which provides guidance regarding the evaluation of migraine headaches. The Q&A provides, inter alia, that listing 11.03 (Epilepsy – nonconvulsive epilepsy) is the most analogous listing for considering medical equivalence for migraine headaches at Step 3. A copy of this Q&A is attached to Plaintiff's Reply Brief. See ECF No. 15-1.

of the workday in addition to normal breaks would not be able to maintain employment. (R. 41). Rather, the ALJ expressly acknowledged that portion of the VE's testimony, but concluded that, "[a]s previously discussed, the substantial evidence does not support these additional limitations to the claimant's capacity to work." Id.

In short, the ALJ did not fail to address Plaintiff's testimony regarding the frequency, duration, and severity of her migraine headaches. Instead, the ALJ discussed Plaintiff's testimony and documentation on these points in detail, but concluded that such testimony was only partially credible, and that the record did not support a finding of disabling limitations that would preclude her from performing work on a full time basis within the parameters of his RFC assessment. Accordingly, Plaintiff's request that I order remand due to lack of discussion of these issues is denied.

To the extent Plaintiff also challenges the ALJ's credibility determination itself, her arguments are similarly unpersuasive. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain or other symptoms: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to

7

which they limit the plaintiff's functioning. (R.21-22). Statements about pain alone, however, do not establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002).

After my own review of the record, I find that the ALJ followed the proper method to determine Plaintiff's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 25-39). Indeed, as previously discussed, the ALJ directly addressed Plaintiff's testimony regarding the frequency, duration, and intensity of her headache pain and did not reject her allegations entirely. Rather, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were partially credible and incorporated numerous limitations related to Plaintiff's headache-related complaints and triggers in his RFC finding. See R. 21 (RFC finding containing limitations on, inter alia, climbing; reaching; handling; fingering; feeling; exposure to heights, moving machinery, flashing or bright lights, exposure to

more than quiet noise intensity level; and various stress-related limitations).² Nevertheless, the ALJ discussed the fact that Plaintiff's statements concerning the severity and intensity of her migraine symptoms and their impact on her ability to perform activities of daily living and to work were more limiting than was established by the medical evidence, her reported daily activities, and her contemporaneous statements to treating and examining sources. (R. 37). He also noted that there were other inconsistent statements throughout the record that detracted from Plaintiff's credibility. Id.

The ALJ supported his credibility determination with substantial record evidence. For example, the ALJ cited records from Plaintiff's treating providers indicating that the medication management prescribed by the pain specialists was effective in reducing the frequency and severity of Plaintiff's headaches and migraines. (R. 37-38, citing Exs. 4F, 8F). He also noted medical records showing that increases in Plaintiff's headaches corresponded with periods when Plaintiff reduced or stopped taking her prescribed medications. (R. 38). The ALJ further cited evidence that Plaintiff was not compliant with following the medical recommendations for treating her migraine conditions except for the medication regimen. (R. 27, 38, citing Exs. 4F, 8F). Such recommended treatment options included physical therapy, chiropractic therapy, injection therapy, the use of omega 3 fatty acids, and activity modification. Id. Records from Plaintiff's mental health therapist similarly noted that Plaintiff "was not receptive to suggestions regarding ways to cope with her difficulties," and "seemed to have excuses as to why each suggestion would not work." (R. 465). See R. 33, 38, citing Exs. 9F, 10F. As the ALJ pointed out, the

---

² These limitations contradict Plaintiff's argument that the only headache-related limitations contained in the ALJ's RFC finding were restrictions on exposure to flashing lights and noise levels. [ECF No. 10, at 8]. As the ALJ noted, his RFC finding also encompasses other triggers supported by the record evidence, including activity, stress, and movement of Plaintiff's upper extremities. See R. 21, 35 (noting that the RFC addresses the identified aggravating pain factors of activity, work stress, and repetitive use of the upper extremities).

therapist would not complete disability benefits paperwork when requested by Plaintiff, and referred Plaintiff to a psychiatrist regarding the same. (R. 38, Ex. 9F). Plaintiff never scheduled an appointment with the psychiatrist and stopped her therapy sessions after that time. Id. Other evidence included the functional assessment determinations of consultative examiner Elizabeth Dunmore, M.D. (Ex. 7F), and the State agency medical consultant (Exs. 2A, 4A), both of whom concluded that Plaintiff could perform the demands of light work despite her migraine headaches. (R. 31-32, 35).[3] As the ALJ explained, the record evidence also failed to corroborate Plaintiff's testimony that she presents to the emergency room approximately twice a month for severe migraines. (R. 38). Instead, the only evidence of an ER visit during the claimed disability period was a record of a visit in August 2012 for neck stiffness upon waking that morning. (R. 38, citing Ex. 11F).

Regarding Plaintiff's activities of daily living, the ALJ noted that, in addition to holding down a part-time job even with untreated headaches (as well as a full-time job during much of the period she was treated for headaches at the pain clinic), Plaintiff reported being able to perform household chores, care for her dogs, drive, sit through a movie, mow the lawn, prepare meals, shop, handle money, and socialize on Facebook. (R. 24, 38). The ALJ concluded that Plaintiff's testimony of her current capabilities and her reported activities of daily living also substantiated his assessment that she retained the functional capacity for light work activity as limited by his RFC finding. (R. 38-39). Plaintiff's argument that the ALJ erroneously failed to

---

[3] None of Plaintiff's treating providers opined that Plaintiff was unable to work due to her migraine headaches. Indeed, more than one provider declined Plaintiff's request to complete social security disability paperwork. (R. 29, 32, 37 & Exs. 4F, 9F, 10F). The ALJ further noted that although Plaintiff's pain management specialists did not issue an opinion regarding Plaintiff's capacity to work, the RFC was consistent with their clinical findings and the medication treatment provided for her cervicalgia, myofascial pain syndrome, occipital neuralgia, and migraines given that Plaintiff was working a full-time and part-time job during the bulk of the treatment period and that the RFC accommodated Plaintiff's identified headache triggers. (R. 35 & Ex. 8F).

10

take into account that she could not perform these daily activities when having a headache is unpersuasive. As set forth above, the ALJ did not ignore Plaintiff's testimony regarding the frequency, severity, and intensity of her headaches and their impact on her ability to perform activities of daily living. Rather, he acknowledged the testimony but found that it was more limiting than and/or inconsistent with the medical records and other record evidence.

Plaintiff's argument that the ALJ failed to favorably consider her long work history likewise is not fatal to his credibility analysis. As an initial matter, contrary to Plaintiff's assertions, the ALJ did not impermissibly "hold her work history against her" by mentioning her part-time work as indicative of an ability to work. A claimant's ability to maintain part-time employment is a factor relevant to whether she is disabled. See Miller v. Comm'r of Soc. Sec., 524 F. App'x 191, 194 (6th Cir. 2013) (citing applicable regulations). Further, the ALJ did not fail to account for Plaintiff's long work history. He acknowledged that history in his opinion and agreed Plaintiff could not perform any past relevant work. (R. 23, 39). As set forth above, the ALJ did not discount Plaintiff's testimony regarding her pain and other symptoms in its entirety. Rather, the ALJ found that testimony partially credible, and, in so doing, acknowledged that pain is subjective and that Plaintiff experienced some pain and discomfort secondary to her migraines and associated conditions. (R. 25, 37). Indeed, the ALJ's RFC finding contained numerous restrictions to accommodate Plaintiff's subjective complaints of pain, headache symptoms, and other triggers. (R. 21). To the extent Plaintiff alleged even greater limitations or symptoms, the ALJ properly explained and supported why that testimony was not fully credible.

In short, this is not a case where the ALJ failed to discuss Plaintiff's limitations or his reasons for his RFC finding and credibility determinations, thus precluding meaningful review. To the contrary, the ALJ thoroughly and thoughtfully addressed these issues, the associated record evidence, and his conclusions regarding the same. As set forth herein, the ALJ's findings

are supported by substantial evidence. Plaintiff's disagreement or dissatisfaction with these findings is not cause for remand.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELLONY LEE NEWCOMER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 14-161J
)
COMMISSIONER OF SOCIAL SECURITY, )
)
)
    Defendant. )
)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 20th day of April, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 9) is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge